## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBIN Y. MILLER | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NEXT STEP HEALTHCARE, LLC, a | ) |
| Delaware corporation, and | ) |
| 40 MARTIN STREET OPERATOR, LLC | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## COMPLAINT

Plaintiff Robin Y. Miller ("Ms. Miller" or "Plaintiff"), for her Complaint against Defendants Next Step Healthcare, LLC ("Next Step") and 40 Martin Street Operator, LLC ("40 Martin Street") (collectively "Defendants"), upon personal knowledge with respect to Plaintiff and her own acts, upon information and belief as to all other matters, and with the belief that all matters alleged herein will have evidentiary support after reasonable opportunity for further investigation and discovery, states as follows:

## INTRODUCTION

1.  Ms. Miller brings this action to redress Defendants' failure to pay her overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the Massachusetts wage laws, M.G.L. c. 149, §§ 148 and 150, M.G.L. c. 151, §§ 1A and 1B, in violation of 29 U.S.C. § 207 and M.G.L. c. 151, §§ 1A and 1B.

2. Ms. Miller has over 25 years of experience in the food services field. Specifically, Ms. Miller has worked as a Food Services Director or Manager for various companies since 2009, and has extensive experience managing dietary departments.

3. Next Step is a healthcare facilities management company that provides management services for nursing and rehabilitation facilities in Massachusetts, New Hampshire, and Maine.

4. Upon information and belief, Next Step itself does not provide nursing home facility or health care services, and is therefore not exempt under the Massachusetts Wage Act.[1]

5. Next Step, upon information and belief, manages a facility called Melrose Healthcare, located at 40 Martin Street, Melrose, Massachusetts 02176, at which Ms. Miller was employed as the Food Services Director.

6. Upon information and belief, Next Step also manages or otherwise operates 40 Martin Street, which, upon information and belief, is involved in the operation of nursing facilities in Massachusetts, including Melrose Healthcare.[2]

7. At all times during Ms. Miller's employment as the Food Services Director with Next Step, Next Step was an "employer," and Ms. Miller was an "employee," within the meaning of those terms, pursuant to 29 U.S.C. § 203; M.G.L. c. 149, § 148; and M.G.L. c. 151A, §§ 1A and 1B.

---

[1] Although "nursing home" is not defined by the Massachusetts Wage Act, according to the United States Department of Labor, a nursing facility is defined as any facility that "primarily engaged in the care of the sick, the aged, or the mentally ill." *See* 29 U.S.C. § 203(s)(1)(B).

[2] This Complaint is brought against both 40 Martin Street and Next Step because it is unclear who Ms. Miller was employed by, as she was paid by 40 Martin Street during the time that she understood that she was working for Next Step. Given the unclear relationship between Next Step and 40 Martin Street, Ms. Miller seeks to hold them both jointly and severally liable.

8. During the entirety of Ms. Miller's employment Next Step and 40 Martin Street classified her as an "exempt" employee under the FLSA.

9. However, from April 3, 2019, to May 28, 2019, Ms. Miller's duties changed significantly because Ms. Miller was forced to take on the functions of a Cook who had been terminated, described *infra* (the "Temporary Period").

10. The Cook's position is non-exempt under the FLSA's Regulations Part 541. *See* 29 C.F.R. § 541.3.

11. During the Temporary Period, Ms. Miller was primarily performing the duties of the Cook, spending more than 50% of her time engaged in the Cook's duties.

12. During the Temporary Period, Next Step and 40 Martin Street failed to reclassify Ms. Miller as non-exempt, as required under the FLSA. *See* 5 C.F.R. § 551.211(e).

13. Ms. Miller worked an average of 80 hours per workweek for a period of 55 days primarily performing non-exempt duties of the Cook during the Temporary Period.

14. Next Step and 40 Martin Street were required to compensate Ms. Miller in accordance with the laws of the United States and Massachusetts, including but not limited to payment at the statutorily-mandated rate of one-and-a-half times Ms. Miller's regular rate of pay for all hours worked in excess of 40 hours per workweek during the Temporary Period.

15. Ms. Miller has satisfied all prerequisites and conditions precedent necessary to seek the remedies sought in this action.

16. Attached as <u>Exhibit A</u> is a letter from the Office of the Massachusetts Attorney General authorizing Ms. Miller to pursue her state law claims against Next Step by private right of action.

## PARTIES

17. Plaintiff Robin Y. Miller is a natural person residing at 92 Granville Avenue, Apartment 1, Malden, Massachusetts 02148.

18. Defendant Next Step Healthcare, LLC, is a Delaware limited liability company registered to do business in Massachusetts with a business address of 75 Second Avenue, Suite 605, Needham, Massachusetts 02494.

19. Defendant 40 Martin Street Operator, LLC, is a Massachusetts limited liability company with a business address of 40 Martin Street, Melrose, Massachusetts 02176.

## JURISDICTION AND VENUE

20. This action is brought pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction over Next Step because it has a principal place of business in the Commonwealth of Massachusetts, and it transacts business in the Commonwealth of Massachusetts.

22. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims have occurred in Massachusetts.

## FACTUAL ALLEGATIONS

A. *Ms. Miller's Employment with Next Step.*

23. Ms. Miller worked for Next Step, stationed at Melrose Healthcare from January 15, 2018, to May 28, 2019, when she was terminated for alleged "job performance" issues.

24.     Despite being terminated for "job performance" issues, Ms. Miller had successfully complied with, and satisfied, a performance improvement plan in the weeks prior to her termination.

25.     Prior to her termination, Ms. Miller was not paid any overtime.  Her last paycheck was issued on May 29, 2019, for $3,519.00.00 for the period of May 10, 2019, to May 28, 2019.

26.     As the Food Services Director, Ms. Miller was responsible for directing and supervising all dietary functions and personnel at Melrose Healthcare, including the cooks and kitchen staff; planning nutritionally-balanced meals for the residents at Melrose Healthcare; hiring, coordinating, orientations, trainings and disciplinary action of all dietary employees; scheduling work and assignments of dietary staff, among other functions.

27.     At all times during Ms. Miller's employment she was supervised by the Administrator, Paul Fuanyi ("Mr. Fuanyi" or the "Administrator").

28.     On or about March 6, 2019, Next Step and 40 Martin Street terminated a Cook, Rick Slattery ("Mr. Slattery"), who was working under the supervision of Ms. Miller.

29.     Ms. Miller promptly found a replacement for Mr. Slattery, an employee within Next Step.

30.     One week before the new Cook was supposed to start, Mr. Fuanyi told Ms. Miller that the replacement Cook would not be hired.

31.     Mr. Fuanyi claimed that the replacement Cook could not be hired at a rate of $25.00 per hour.

32.     It was nearly impossible for Ms. Miller to find a replacement Cook who could be trained in the one-week timeframe left before the Cook was supposed to start, due to management's delay in informing Ms. Miller that the replacement Cook would not be suitable.

33. Ms. Miller often told management that if Next Step made a slight increase in the wage for the Cook's position ($21.00 per hour, or so, instead of $18.00 per hour) Next Step would likely be able to find a suitable replacement, as there were more qualified applicants who had applied for the open position who were looking for a slightly higher rate of pay than Next Step was currently offering for the position.

34. Despite Ms. Miller's suggestion, Next Step did not increase the starting rate of pay for the Cook's position, and instead lowered the rate of pay from $18.00 per hour, to $17.70 per hour, and then to $16.60 per hour as of May 28, 2019.

35. Upon information and belief, during the period from March 6, 2019, to May 28, 2019, Next Step purposely made it difficult for Ms. Miller to hire an experienced cook to replace Mr. Slattery based on the consistent decrease in the pay offered for the Cook's position.

36. Only one other full-time Cook, Marie Rosius ("Ms. Rosius") was working at Melrose Healthcare at this time.  Ms. Rosius could not, on her own, do all the cooking and related duties without help.

37. Mr. Fuanyi asked Ms. Miller to take on the additional duties of the Cook, on top of her Food Services Director position.

38. Upon information and belief, Next Step did this to save money by forcing Ms. Miller to work two jobs for one salary.

39. Ms. Miller stated that it was too painful physically for her to take on the Cook's position, due to spinal issues, and told Mr. Fuanyi that her doctor was willing to provide her with a doctor's note stating that she was physically unable to work as a cook.[3]

---

[3] Ms. Miller did not obtain a doctor's note which would prevent her from cooking only out of her desire to perform her job function as best as she could and to continue to serve the residents where she worked.

40. Nevertheless, Next Step required Ms. Miller take on Mr. Slattery's position, beginning on or about April 3, 2019.

41. Ms. Miller worked two full-time jobs for one salary during the Temporary Period.

42. During the hours that Ms. Miller worked as a Cook, she was unable to fully perform her duties as the Food Services Director.

43. In addition to her work as the Food Services Director, Ms. Miller's job responsibilities as the Cook included, but were not limited to the following non-exempt functions under the FLSA:

   a. Preparing all necessary menu items in accordance with established standards;

   b. Following recipes;

   c. Preparing substitute food items to meet residents' individual needs;

   d. Covering, dating, and storing all leftovers;

   e. Discarding expired food;

   f. Taking inventory of supplies and equipment;

   g. Washing pots, pans, dishes, utensils, and other cooking equipment;

   h. Washing floors, walls, and linoleum in kitchen, dining room, and food storage area; and

   i. Ensuring that all supplies and equipment were kept in a clean and sanitary condition.

44. Starting on or about April 3, 2019, Ms. Miller worked approximately 48 hours per workweek, performing the duties of the Cook, and 32 hours per workweek performing her duties as the Food Services Director.

45. During the Temporary Period, Ms. Miller spent approximately 60% of her time performing and fulfilling the non-managerial, labor intensive duties of a Cook.

46. On May 10, 2019, Ms. Rosius, the only other full-time Cook submitted to Next Step a doctor's note restricting her from cooking. Ms. Rosius offered to continue working the schedule that was then-currently in place until May 23, 2019. However, once Ms. Rosius submitted the doctor's note, Next Step did not allow Ms. Rosius to continue working.

47. After Ms. Rosius was permitted to stop cooking, Ms. Miller was forced to take on Ms. Rosius' cooking shifts as well.

48. Once Ms. Rosius stopped working on May 10, 2019, Ms. Miller worked seven days per week, working approximately five double shifts, from 5:00 a.m. to 8:00 p.m. (or later) consecutively, and two more eight-hour shifts on the weekends.

49. Upon information and belief, Next Step forced Ms. Miller to take on both of the Cooks' positions, as well as her own Food Services Director position, in an effort to save itself money.

    **B.**    *Next Step's Failure to Pay Legally Required Overtime.*

50. Ms. Miller worked approximately 80 hours per workweek from April 3, 2019, to May 28, 2019, a period of 55 days in total.

51. Despite working two jobs for one salary for 55 days (and actually three jobs for 18 days of that period), Ms. Miller was not reclassified as a "non-exempt" employee. Under the FLSA, an employee who takes on non-exempt work or duties for a temporary period of time (30 days or more) must be re-classified if the non-exempt work exceeds 50% of the total time that the employee worked in a given workweek, as it did in Ms. Miller's case. *See* 5 C.F.R. § 551.211(e).

52. Ms. Miller was never reclassified under the FLSA, nor was she paid any overtime pay, despite working 80-hour workweeks for a period of 55 days.

53. Accordingly, Next Step and 40 Martin Street have violated the FLSA by failing to pay Ms. Miller overtime.

### C. *Ms. Miller's Rate of Pay.*

54. Ms. Miller was hired as the Food Services Director at a salary of $66,000 per year.

55. Ms. Miller was hired to work 40 hours per workweek, plus a few additional hours to fill in, as needed, for one or two days per week.

56. Once Ms. Miller was forced to take on the duties of the Ms. Rosius as well, she worked 80 hours per week, but was still only being paid a salary of $66,000.00, or approximately $1,269.23 per week.

57. Mr. Slattery's position (which Ms. Miller subsequently took on) paid $18.00 per hour at the time of Mr. Slattery's termination.

58. Because Next Step and 40 Martin Street failed to reclassify Ms. Miller as non-exempt for the Temporary Period, Ms. Miller was not paid overtime at her regular rate of pay.

59. The "regular rate" of pay for the Temporary Period, according to the FLSA, is to be calculated by finding the weighted average of the two rates of pay. *See* 29 C.F.R. § 778.108.

60. Next Step failed to calculate Ms. Miller's regular rate of pay for the Temporary Period, which should have been calculated using the weighted average of the two rates of pay Ms. Miller should have been paid for the Cook and Food Services Director positions, respectively, and multiplying that rate by one-and-a-half, further multiplied by the number of hours Ms. Miller worked beyond 40 hours per week.

61. The weighted average of the two rates of pay Ms. Miller should statutorily have been paid at were $18.00 per hour for the hours worked performing the duties of Mr. Slattery, and $31.73 per hour for the hours performing the duties of the Food Service Director.[4]

## COUNT I
### Violation of the Fair Labor Standards Act – Failure to Pay Overtime

62. Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

63. Pursuant to the FLSA, specifically 29 U.S.C. § 216(b), Next Step was obligated to pay Ms. Miller at the overtime rate for all hours worked in excess of 40.

64. Because Next Step and 40 Martin Street failed to pay Ms. Miller the required amount of overtime at the statutory rate, Next Step and 40 Martin Street are liable not only for the unpaid overtime wages, but also for liquidated damages in the amount equal to the amount of unpaid overtime wages.

65. Ms. Miller has been injured by Next Step's and 40 Martin Street's failure to pay her overtime wages in an amount to be proven at trial.

66. Pursuant to the FLSA, Ms. Miller is further entitled to the costs and attorneys' fees incurred if she is successful in prosecuting an action for her unpaid overtime wages.[5]

## COUNT II
### Violation of the Massachusetts Wage Act – Failure to Pay Overtime

67. Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

---

[4] Ms. Miller's hourly rate for the Food Services Director position is calculated by taking her annual salary ($66,000.00) and dividing that by the number of weeks in a year (52), divided by the number of hours she was hired to work as the Food Services Director per week (40).

[5] Ms. Miller estimates her damages under the FLSA to be at least $23,950.40, including liquidated damages and benefits, but exclusive of interest and attorneys' fees and costs, calculated using the weighted average of Ms. Miller's pay as described *supra*.

68. As is previously alleged herein, Defendants failed to pay Ms. Miller her regular rate of pay for all hours of work she performed, as is required by federal law and Massachusetts state law. The uncompensated time includes, but is not limited to, overtime hours.

69. Defendants' failure to pay Plaintiff for these activities violates the Massachusetts Wage Act, M.G.L. c. 151 §§ 1A, *et seq*. Pursuant to the Massachusetts Wage Act, Defendants were obligated to pay Ms. Miller at the overtime rate.

70. Further, a violation of the FLSA is *per se* a violation of the Massachusetts Wage Act. *Jin Hai Li v. Foolun, Inc*., 273 F. Supp. 3d 289, 292 (D. Mass. 2017) ("A failure to pay overtime wages under the FLSA is also a violation of the Wage Act.").

71. Pursuant to the Massachusetts Wage Act, Ms. Miller is further entitled to the costs and attorneys' fees incurred if she is successful in prosecuting an action for her unpaid wages, treble damages, penalties, and interest.[6]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robin Miller prays that this Court grant her the following relief:

1. That judgment is entered on behalf of Plaintiff on all Counts in her Complaint.

2. Determine the damages sustained by Plaintiff due to Defendants' violations of the FLSA and the Massachusetts Wage Act.

3. As to court I, enter judgment against Defendants in an amount to be determined at trial, and that such amount to be doubled as liquidated damages, in accordance with 29 U.S.C. § 216(b), plus interest, costs and attorneys' fees.

---

[6] Ms. Miller estimates her damages under the Massachusetts Wage Act to be at least $35,225.60, including treble damages and benefits, but exclusive of interest and attorneys' fees and costs, calculated using the weighted average of Ms. Miller's pay as described *supra*.

4. As to court II, enter judgment against Defendants in an amount to be determined at trial, and that such amount comprise treble damages in accordance with M.G.L. c. 151, § 1B, plus interest, costs and attorneys' fees.

5. Award Plaintiff her costs and disbursements of this suit, including, but not limited to, reasonable attorneys' fees, or any other fees.

6. That the Court grant Plaintiff such other and further relief as it considers just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully Submitted,

**ROBIN MILLER**

By her attorneys,

By: /s/ Colin R. Hagan
Colin R. Hagan, BBO No. 684798
David J. Shlansky, BBO No. 565321
SHLANSKY LAW GROUP, LLP
1 Winnisimmet St.
Chelsea, MA 02150
Phone: (617) 497-7200
Fax:    (866) 257-9530
E-mail: Colin.Hagan@slglawfirm.com
           David.Shlansky@slglawfirm.com

Dated: July 26, 2019